## 71109. BROWN et al. v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.
## 71325. DUMAS v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.
(338 SE2d 721)

DEEN, Presiding Judge.

During the early evening hours of April 18, 1983, after he and his wife had spent most of the day drinking beer at Dennis' Cafe, Gary Brown played on the Black Knight pinball machine. Venting his frustration over losing a ball, he cursed loudly, which offended Robert Dumas, another patron of the bar. Brown approached Dumas ostensibly to apologize, but an altercation resulted instead. Cross words were exchanged, and the conflict escalated when Dumas hit Brown over the head with a beer bottle. Eventually both men drew handguns (although there was a dispute over who first displayed artillery), and Dumas discharged five rounds from his automatic pistol. Brown was hit several times, and as he toppled over his gun also discharged, wounding his wife in the stomach. Gary Brown was thus slain, and Dumas ultimately was convicted of voluntary manslaughter. See *Dumas v. State*, 173 Ga. App. 227 (326 SE2d 1) (1984).

Subsequently, Leslie Brown commenced an action against Dumas for the wrongful death of her husband and for her own injury. The appellee, St. Paul Fire & Marine Company, as Dumas' insurer, then sought declaratory judgment of no coverage under its "All-in-1" policy issued to Dumas, based on an exclusion for intended or expected injuries. The specific exclusion provided for coverage for Dumas' legal liability resulting from his involvement in an accident or incident; the

exclusion defined accident or incident as "[a]nything that causes property damage, personal injury or death without you expecting or intending it. If you could've expected the result, you're not covered. The only exception is assault and battery committed to save a life or property." The trial court directed a verdict for the insurer, on the basis that both Gary Brown's death and Leslie Brown's injury resulted from an intentional homicide, and both Leslie Brown and Dumas appeal. (Separate appeals were filed from the same judgment.) *Held*:

"The general rule which appears to have developed through judicial interpretation and application of exclusionary provisions such as the one in the instant case is that they are inapplicable if and only if the insured acts without the intent or expectation of causing any injury, however slight. Conversely, such an exclusion is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected. See generally, Annot. 2 ALR3d 1238, 1243 § 4 (1965). Thus, there is a recognized distinction between intentional and unintentional results of intentional acts. 'Intent' is defined in Restatement, Torts 2d, § 8A (1965) 'to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it.' 'On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent.' Prosser, The Law of Torts, p. 32 § 8 (4th ed. 1971)." *Colonial Penn Ins. Co. v. Hart*, 162 Ga. App. 333, 335 (291 SE2d 410) (1982). Applying that general rule to the instant case, we conclude that directed verdict for the insurer was proper for the wrongful death claim, but that at least a jury question existed over whether the exclusion applied to Leslie Brown's claim for her own injury.

Concerning the wrongful death claim, although he insisted that he did so in self-defense, Dumas admitted that he intended to shoot and injure Gary Brown. His claim of self-defense may have (unsuccessfully) raised the criminal defense of justification for an intentionally caused injury, but it did not vitiate his admitted, actual intent to cause the injury. See *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811, 813 (324 SE2d 510) (1984). The appellant emphasizes the exclusion's extension of coverage for an intentional assault and battery committed to save a life, and contends that a jury question thus existed over whether the exclusion is inapplicable because Dumas committed a battery (albeit homicide) to save his own life. However, we agree with the trial court's interpretation that this exception to the exclusion could and should not extend to homicides. Accordingly, the policy effectively excluded coverage for any liability Dumas may suffer for the death of Gary Brown, and the trial court properly directed verdict for

the insurer as to the wrongful death claim.

We must reach the opposite conclusion with regard to Leslie Brown's claim for her own injury, because of this court's previous differentiation between intentional and unintentional results of intentional acts, and the adoption of a "substantial certainty" analysis in defining an intentional act. In the instant case, while the general risk of some third party's being injured during Dumas' shoot-out with Brown in Dennis' Cafe may have been appreciable, the evidence did not demand a finding that Dumas believed Leslie Brown's wound was substantially certain to result; rather, it appears that, if anything, he had no intent to injure anyone but Gary Brown. Accordingly, because the evidence would have authorized a jury to find that Leslie Brown's injury was an unintentional result of an intentional act, thus rendering the exclusion inapplicable, the trial court erred in directing verdict for the insurer on Mrs. Brown's claim as to her own injury. Cf. *Colonial Penn Ins. Co. v. Hart*, supra.

*Judgment affirmed in Case Nos. 71109 and 71325 as to the wrongful death claim; case remanded for further proceedings with regard to the personal injury claim. Pope and Beasley, JJ., concur.*

DECIDED NOVEMBER 26, 1985 —
REHEARING DENIED DECEMBER 10, 1985 — 

*John F. Davis, Jr., William Rhymer, Edward T. Brock*, for appellant (case no. 71109).
*Michael W. Tittsworth*, for appellee.
*Edward T. Brock, William Rhymer*, for appellant (case no. 71325).
*John F. Davis, Jr., Michael W. Tittsworth*, for appellee.