William J. KENNEDY, Jr., a/k/a Rusty Kennedy, Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY, Defendant.

Civ. A. No. 289–43.

United States District Court, S.D. Georgia, Brunswick Division.

March 7, 1990.

---

Amanda F. Williams, Brunswick, Ga., for plaintiff.

Joseph H. Barrow, Savannah, Ga., for defendant.

### ORDER

ALAIMO, District Judge.

William Kennedy (hereinafter "plaintiff" or "the insured") brings the instant action seeking a declaratory judgment that the defendant insurance company has a duty to

---

defend and, if necessary, indemnify him in a pending tort action brought against plaintiff by one Earl Metcalf. The case is currently before the Court on the defendant's motion for summary judgment. For reasons expressed below, this motion must be granted.

FACTS

Plaintiff holds a "Homeowners Extra" policy with the defendant, State Farm Fire and Casualty Company. This policy provides that State Farm will defend and indemnify the insured against personal liability. The policy, however, specifically excludes from coverage "bodily injury or property damage ... which is either expected or intended by an insured." *See* Defendant's Exhibit A. This exclusionary clause is the focus of the current litigation.

The above-described policy was in effect on November 29, 1987, when the insured was involved in an altercation with one Earl Metcalf at the St. Simons Island Marina. On that day, Metcalf was at the marina preparing to launch his boat. The insured was there also, having just removed his boat from the water. Metcalf approached the insured, informed him that his boat was blocking access to the launching area and requested that he move it. The men exchanged epithets, and the insured struck Metcalf in the face at least twice with his closed fists, causing Metcalf significant injury.[1]

On December 8, 1987, Metcalf filed suit against the insured in Glynn County Superior Court, seeking damages for assault and battery (hereinafter "the Metcalf suit"). The insured then forwarded the complaint to State Farm and made a demand for coverage. Before answering the complaint or undertaking a defense in the Metcalf suit, State Farm entered into a "bilateral non-waiver of rights agreement" with the insured. This agreement, signed by the insured, provides in part that: "It is questionable whether [Metcalf's] injuries were either intended or expected by Mr. William J. Kennedy, Jr. For the reason

stated above, State Farm may have no duty to defend or indemnify [Kennedy]...." Defendant's Exhibit B.

On February 23, 1988, State Farm interviewed the insured. During the course of this interview, the insured admitted that he had intentionally struck Metcalf at least twice in the face with his closed fists. *See* Defendant's Exhibit C, at pp. 3–5.

Following a May 4, 1988, jury trial in Glynn County State Court, the insured was found not guilty of criminal charges stemming from the marina incident. Nevertheless, after examining a transcript of the criminal trial, State Farm determined that its initial decision was correct and that the Metcalf suit fell squarely within the policy exclusion for injuries "expected or intended by the insured." On July 29, 1988, State Farm notified the insured of its determination of non-coverage. Several days later, over the insured's protest, State Farm's attorney withdrew from the defense of the Metcalf suit. The insured's personal attorney then filed the instant declaratory judgment action against State Farm in Glynn County Superior Court. State Farm removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1441. The Metcalf suit has been stayed pending the resolution of this action.

DISCUSSION

*Summary Judgment Standard*

State Farm argues persuasively that the insured's assault of Metcalf, as a matter of law, falls within the policy exclusion for injuries "expected or intended by the insured," *see* Defendant's Exhibit A, and that, for this reason, it has no duty to defend or indemnify him. The insured, although conceding that he intentionally struck Metcalf in the face repeatedly with his fists, alleges that he neither expected nor intended to cause Metcalf injury. The insured argues that his denial of an intent to injure creates a question of fact for the jury regarding his intent and, thus, pre-

---

**1.** Metcalf suffered a split lip, which required 13 stitches to repair; a torn ear; and various bruis-

es about the head and face.

cludes the disposal of this case by summary judgment.

It is often stated that summary judgment is inappropriate in cases where there are disputed facts. As with most aphorisms, however, this statement requires qualification: "By its very terms, [Fed.R. Civ.P. 56(c)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of ... fact." *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). A factual dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510.

Of course, a judge considering a motion for summary judgment may not himself weigh the evidence and determine the truth of the matter. Rather, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511. For reasons set out more fully below, the plaintiff's claim cannot withstand this threshold inquiry. Since the undisputed evidence in this case permits but one reasonable conclusion, the services of a jury are unnecessary and the movant should be spared the expense and trauma of a trial.

### The Exclusionary Clause

The "intentional injury" clause at issue here is boilerplate language in modern liability insurance policies, *see* Annot., 2 A.L. R.3d 1238, 1240–41, § 2 (1965), and has been the subject of considerable attention by the courts of this state. A general rule has emerged from the case law that such clauses do *not* exclude coverage where the insured commits an intentional act but does not expect or intend that his act will cause injury. *See, e.g., Georgia Farm Bureau Mutual Ins. Co. v. Hurley,* 190 Ga.App.

546, 379 S.E.2d 420 (1989); *Pennsylvania Millers Mutual Ins. Co. v. Crews,* 184 Ga. App. 492, 361 S.E.2d 657 (1987); *Colonial Penn Ins. Co. v. Hart,* 162 Ga.App. 333, 291 S.E.2d 410 (1982). In other words, the key question is not whether the insured acted intentionally; rather, it is whether, in so acting, he intended or expected to cause injury. If the insured acted intentionally, but without the expectation or intention of causing injury, there may be coverage. *See, e.g., Hart, supra,* at 335, 291 S.E.2d 410; *Crews, supra,* 184 Ga.App. at 493, 361 S.E.2d 657.

However, the mere fact that "the actual, resulting injury is different either in kind or magnitude from that intended or expected by the insured" will not suffice to render the exclusionary clause inapplicable. *Hart, supra,* 162 Ga.App. at 335, 291 S.E.2d 410. Only if the insured acts "without the intent or expectation of causing *any injury, however slight,"* will there be coverage under the policy. *Id.* (emphasis added).

The plaintiff in *Hart* was shot when the insured intentionally fired a shotgun toward him. However, the insured stated that he took the plaintiff for a prowler and intended only to fire a warning shot above the prowler's head—not to shoot him. The court held that this evidence created a jury question as to whether the plaintiff's injuries were "intended or expected by the insured" within the meaning of a liability insurance policy exclusion. *Hart, supra,* at 335, 291 S.E.2d 410.

The insured in *Hurley* admitted that he intentionally pushed the plaintiff with his foot; however, he denied intending or expecting to thereby injury the plaintiff. The court denied the insurer's motion for summary judgment. Noting that "[t]he type and degree of force employed by the insured in the present case could reasonably be viewed as consistent with the absence of any intention on his part to cause injury," the court held that it was a jury question whether the insured intended to injure the plaintiff. *Hurley, supra,* 190 Ga.App. at 548, 379 S.E.2d 420.

The insured in *Crews,* a school principal, admitted that he intentionally spanked the plaintiff student; however, he denied that he expected or intended to inflict actual injury. Rather, he claimed that the injury resulted only because the child turned her body just as the paddle was descending. The trial court granted summary judgment against the insurer on the issue of liability coverage. The appellate court affirmed, reasoning that "the principal's claim ... would certainly warrant the conclusion that the injury was an unintended consequence of the spanking, thus rendering the policy exclusion inapplicable." *Crews, supra,* 184 Ga.App. at 493, 361 S.E.2d 657.

The above cases are clearly distinguishable from the case at bar. Here, it is undisputed that the insured, in anger, struck another man repeatedly in the face with his fists, causing significant injury. Unlike the situation in *Hart,* the insured in this case has not claimed that he intended his blows to miss Metcalf's body. Nor is there any evidence to indicate that Metcalf would have escaped injury but for some sudden turn of his body as the blows were descending—the situation in *Crews.* In *Hurley,* the insured's intent was a question of fact for the jury because the type and degree of force employed by the insured in that case—a push of the foot—"could reasonably be viewed as consistent with the absence of any intention on his part to cause injury." *Hurley, supra,* 190 Ga. App. at 548, 379 S.E.2d 420. Clearly, the insured's actions in the instant case *cannot reasonably* be viewed as consistent with the absence of any intention on his part to cause injury.

The insured claims that he had never before been involved in a physical fight and

that, for this reason, he had no expectation that his act of punching Metcalf in the face would cause injury.[2] This argument simply taxes the imagination—and the patience—of the Court. Common experience teaches that the human face will suffer injury when it is repeatedly and forcefully hit with a hard object, such as a fist; one need not be a pugilist to appreciate that most rudimentary principle. As stated in *Roe v. State Farm Fire & Casualty Co.:*

> [The insured] must be presumed under such circumstances to have intended those injuries which naturally and unavoidably flowed from his [actions], with the result that his assertion that he did not subjectively intend to cause injury to [the injured person] 'does not demonstrate any unintended consequences of an intentional act so as to avoid application of the policy exclusion.' *Antill v. State Farm Fire & Casualty Co.,* 178 Ga.App. 659 [344 S.E.2d 480] (1986). To conclude otherwise would be to allow any insured to defeat such a policy exclusion ... simply by stating that he had no subjective intention of causing the injury. ...

188 Ga.App. 368, 369, 373 S.E.2d 23 (1988) (granting summary judgment for the insurer and holding as a matter of law that an insured who molests a child intends or expects to cause injury), *aff'd,* 259 Ga. 42, 376 S.E.2d 876 (1989).

Perhaps the insured did not expect or intend that Metcalf would suffer such a *significant* injury as in fact resulted. However, the Georgia courts have consistently held that coverage may be denied whenever an insured expects or intends to cause *"any* injury, however slight." *Hart,*

---

**2.** The insured argues also that he struck Metcalf in self-defense and, therefore, his conduct falls outside the ambit of the exclusionary clause. He raised the self-defense argument, with apparent success, in the criminal trial arising out of this incident. However, the self-defense issue—while relevant in a criminal action—has absolutely no bearing on the coverage question which is the focus of this litigation.

[A] claim of self-defense may raise the criminal defense of justification for an intentionally caused injury, [but] it does not vitiate the actual intent to cause injury. "The defenses

of self-defense and justification do not deny the intent to inflict injury, but claim authority for the act under [a] legal excuse...." Accordingly, we hold that a claim of self-defense does not vitiate the element of intent so as to remove an act from the ambit of the exclusionary clause in the instant policy.

*Stein v. Massachusetts Bay Ins. Co.,* 172 Ga.App. 811, 813, 324 S.E.2d 510 (1984) (*quoting Fields v. State,* 167 Ga.App. 816, 818, 307 S.E.2d 712 (1983)). *See also Brown v. St. Paul Fire and Marine Ins. Co.,* 177 Ga.App. 215, 216, 338 S.E.2d 721 (1985) (same).

*supra,* 162 Ga.App. at 335, 291 S.E.2d 410 (emphasis added). *See also Roe, supra,* 188 Ga.App. at 369, 373 S.E.2d 23; *Crews, supra,* 184 Ga.App. at 492, 361 S.E.2d 657. For these purposes, it is wholly irrelevant that "the actual, resulting injury is different either in kind or magnitude from that intended or expected" by the insured. *Id.*

CONCLUSION

The undisputed evidence in this case permits but one reasonable conclusion; namely, that the insured intended to, and did, cause injury to Metcalf. For this reason, the case is ripe for summary judgment and need not be submitted to the finder of fact. Accordingly, the defendant's motion for summary judgment is hereby GRANTED. The Clerk of the Court is directed to enter an appropriate judgment.

SO ORDERED.