A90A0098. EUBANKS v. NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY.
A90A0099. GIBSON v. NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY.
(393 SE2d 452)

DEEN, Presiding Judge.

Appellant Susan M. Gibson, individually and as surviving spouse of Gene Gibson, filed a wrongful death action against appellant William E. Eubanks seeking to recover damages on behalf of herself and three minor children of the deceased for the shooting and killing of her husband by Eubanks. Appellee Nationwide Mutual Fire Insurance Company had issued Eubanks a policy of homeowner's insurance providing liability and medical payments coverage, and was called upon by Eubanks to defend him against Gibson's suit and to pay up to the policy limits any judgment rendered against him. Nationwide filed the instant declaratory judgment action against Gibson and Eubanks in order to resolve whether coverage was afforded under the terms of the insurance contract. The evidence presented at trial conclusively established that Eubanks was delusional, psychotic and mentally ill when he shot and killed Gene Gibson. Nationwide denied coverage because the policy in question expressly provided that it did not apply to "bodily injury or property damage . . . which is expected or intended by the insured." Gibson and Eubanks contended that proof of mental incompetence negated any intent to cause bodily injury as a matter of law so as to entitle Eubanks to coverage under the policy. At the close of the evidence the trial court denied motions for directed verdict made by Eubanks and Nationwide. The jury returned a verdict in favor of Nationwide and the motions for judgment notwithstanding the verdict or for new trial made by Gibson and Eubanks were denied, from which they have both appealed.

1. Appellants contend that the trial court erred in failing to grant their motions for judgment n.o.v. or for new trial because (1) a mentally incompetent person is incapable of intent as a matter of law; and (2) the doctrine of transferred intent, although there was no actual third person, should be applied based on previous Georgia cases.

There is no dispute between the parties that William Eubanks was legally insane at the time he shot Gene Gibson. It was the opinion

of two psychiatrists who treated Eubanks that after weeks of sleep deprivation and devoted care of his dying wife he was "unable to realize the reality of the situation," was delusional, not in control of himself, could not accurately apprehend the facts of the situation and was at the time psychotic and suffering from dementia, which was subsequently diagnosed as probably cause by Alzheimer's disease. The delusion under which Eubanks was laboring at the time was that Gibson was going to kill him after they had argued over Gibson's blocking Eubanks' car in the parking area of a shopping center. After Eubanks drove away and Gibson pursued him, Eubanks took a pistol from his car and shot Gibson five times. According to one of the psychiatrists, Eubanks "had the mental ability to defend himself and that's about as far as [he] could go. . . . [I]f he had any less than that he'd probably be comatose. . . . He probably had the mental ability of a child that . . . knew what the pistol could do to protect him and knew how to point the pistol." In this medical expert's opinion, Eubanks' insight and judgment at the time he shot Gibson were less than that of a five-year-old child, and his response to the perceived danger from Gibson was an act of self-defense. The other psychiatrist testified on direct examination by Nationwide that in his opinion Eubanks intended to shoot Gibson. On cross-examination he explained that Eubanks "intended to shoot at, hit, and probably kill [an] individual that, in his mind, he saw had a weapon and was threatening his life," but that he did not intend to kill a man who was not threatening him or his wife with bodily harm. The testimony of Mrs. Eubanks' physician and office staff who had seen Eubanks just prior to the incident, and others who witnessed the shooting, fully corroborated these medical opinions of Eubanks' mental state.

Appellants submit that "intent" for the purposes of the intentional act exclusion of the homeowner's policy contemplates more than that minimal mental component necessary to point a gun at someone and shoot it, and that this conclusion is required by *State Farm &c. Cas. Co. v. Morgan*, 185 Ga. App. 377 (364 SE2d 62) (1987); aff'd 258 Ga. 276 (368 SE2d 509) (1988). We do not agree. The *Morgan* case involved the negation of intent through voluntary intoxication rather than insanity, and the import of its holding, as well as the majority opinion of the Supreme Court affirming it, is that the question of whether intent or expectation excludes coverage for injuries "uniquely fits the pattern of those issues of material fact which are not appropriate issues for summary judgment but are decided by the trier of fact." Id. at 258 Ga. 276. Thus appellants received just what they were entitled to, to wit, a jury trial.

The case of *State Farm &c. Ins. Co. v. Gross*, 188 Ga. App. 542 (373 SE2d 789) (1988) is much closer factually to the instant situation. There the case was before this court on interlocutory appeal

from the denial of the insurer's motion for summary judgment in a declaratory judgment action under an identical policy exclusion. The insured had shot and killed his next door neighbor believing that the neighbor and his wife were having an affair. The insured testified that he wanted to kill the neighbor and intended to kill him, but contended that fact issues with respect to the applicability of the exclusion existed due to psychiatric opinion testimony that he was acting out of a delusional compulsion and was unable to distinguish between right and wrong at the time of the killing. Two judges held that "[i]n order for a delusional compulsion to constitute a defense to a criminal charge, it must be as to a fact which, if true, would justify the act. [Cits.]" Id. at 543. However, because the evidence showed that the insured was leading "a relatively normal day-to-day life" at that time, the plurality determined that there was "no basis whatever for a conclusion that his ability to intend the consequences of the shooting was undermined by his purported inability to appreciate the rightness or wrongness of his conduct. [Cit.]" Id.

Judge Beasley, concurring specially in *Gross*, pointed out that while insanity may be a defense to an intentional tort it not always is a defense: "If there is evidence that the insanity was such as to preclude the forming of intent to do the act complained of, then the jury must decide whether such an intent was present or blocked. If the evidence of intent to do harm is such that it existed in spite of the insanity, then insanity is irrelevant on the issue of intent. This is so even if the insanity is such that it would excuse the actor from *criminal* responsibility, applying the criminal law standard of insanity." Id. at 544. Judge Beasley agreed with the plurality's conclusion that the trial court erred in denying the insurer's motion for summary judgment in *Gross*, however, because no jury issue existed "given the unrebutted testimony of the actor that he intended the act and its harmful consequences." Id.

In the present case, there was eyewitness testimony that Eubanks approached the pickup truck which Gibson was driving and fired several shots at him through the window at point blank range. Eubanks then walked around the truck to where Gibson was lying on the pavement and fired several more shots at him. Eubanks was also heard to threaten another person who was with Gibson. After the shooting Eubanks surrendered himself to a police officer, and showed the presence of mind to hold his gun over his head in a non-threatening manner as he approached the officer. Eubanks told the officer he had shot Gibson, and led him to the body. The officer testified that when he asked Eubanks how many times he had shot Gibson, Eubanks stated "I shot him five times. I unloaded the gun on him. . . . There's no use pulling a gun on somebody . . . unless you're planning on using it."

It thus appears that even if Eubanks were acting under the delusional misperception of self-defense, he fully intended to fire the gun at Gibson and to cause him bodily harm. "If appellant intentionally fired the gun at [Gibson], albeit in self-defense, even if appellant were to assert that such actual injury to [Gibson] as thereby resulted was not that desired or expected, '(t)he general rule which appears to have developed through judicial interpretation and application of exclusionary provisions such as the one in the instant case is that they are inapplicable if and only if the insured acts without the intent or expectation of causing any injury, however slight. Conversely, such an exclusion is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting injury is different either in kind or magnitude from that intended or expected. (Cit.)' [Emphasis omitted.] Accordingly, . . . a claim of self-defense does not vitiate the element of intent so as to remove an act from the ambit of the exclusionary clause in the instant policy." *Stein v. Mass. Bay Ins. Co.*, 172 Ga. App. 811, 813 (324 SE2d 510) (1984). See also *Georgia Farm Bureau &c. Ins. Co. v. Hurley*, 190 Ga. App. 546 (379 SE2d 420) (1989).

It is thus clear that neither Eubanks' insanity nor the fact that he was, or thought he was, acting in self-defense entitled appellants to judgment as a matter of law. Nor do we agree with appellants' argument that the defense of "transferred intent" is applicable here because Eubanks actually intended to kill a non-existent aggressor rather than Gibson. In *Brown v. St. Paul Fire &c. Ins. Co.*, 177 Ga. App. 215 (338 SE2d 721) (1985), upon which appellants rely, where the insured accidentally shot another bystander during a shoot-out with his intended victim, this court held that because the evidence did not demand a finding that the insured intended or expected the injury to the other person would be the result of his intentional act, a jury question was presented in regard to whether the exclusion was applicable. Even accepting appellants' argument that the theory should be expanded to include what they describe as "in effect two entities, one real and one non-real," *Brown* holds that the issue of transferred intent is a jury question. Appellants were allowed to present this question to the jury and cannot complain because it was decided adversely to their position. Construing the evidence in a light most favorable to the party securing the jury's verdict, as we are required to do, it is clearly apparent that the trial court did not err in denying appellants' motions for directed verdict, for judgment notwithstanding the verdict, or for new trial. *Orkin Exterminating Co. v. Durden*, 189 Ga. App. 479 (1) (376 SE2d 376) (1988); *Davis v. Glaze*, 182 Ga. App. 18 (1) (354 SE2d 845) (1987).

2. As requested by appellee, the trial court charged the jury "that if one discharges a gun under circumstances which indicate that it

was not accidental there is a conclusive inference that he intended to fire the gun, and if pointed it at another and fired and hit him there is a conclusive inference that he intended to hit him in the absence of anything to rebut such inference." The trial court also instructed the jury that insanity could negate intent, and that the jury had the task of determining in the instant case whether insanity negated Eubanks' intent to injure Gibson. Thus, contrary to the contention of the appellants, the trial court's charge did not demand a conclusive inference or presumption.

The appellants also contend, for the first time on appeal, that this jury charge's mere use of the word "accidental" constituted an erroneous and harmful introduction of the defense of accident into the case. We do not address this contention, however, since that basis for objection was not asserted at trial. *Chrysler Corp. v. Marinari*, 182 Ga. App. 399 (3) (355 SE2d 719) (1987).

3. The trial court also instructed the jury that if it found that Eubanks had the intent to injure Gibson, then Eubanks' "mental illness, insanity, delusion, or inability to distinguish right from wrong is not a defense to the policy exclusion." In other words, the trial court informed the jury that mental illness was not a winning defense unless it negated intent on the occasion in question. This was a correct statement of law under *State Farm &c. Ins. Co. v. Gross*, supra.

4. Appellants objected to Nationwide's requested charge that "an act of self-defense is, in and of itself, an intentional act." The giving of this instruction is enumerated as error on appeal on the ground that self-defense was not an issue in the case and that it was not adjusted to the evidence because, unlike the situations in *Stein v. Mass. Bay Ins. Co.* and *Brown v. St. Paul Fire &c. Ins. Co.*, supra, where the assailants intended in fact to injure the persons they shot in self-defense, Eubanks' action was precipitated by his insane and psychotic delusion that his life was in danger. However, both psychiatric experts testified that Eubanks was reacting in self-defense to a perceived threat, and other witnesses testified that there had been an argument and harsh words between Gibson and Eubanks prior to the shooting.

" 'The defenses of self-defense and justification *do not deny the intent to inflict injury,* but claim authority for the act under the legal excuse of reasonable fear of immediate serious bodily harm to oneself or another. (Cit.) Since an accident defense involves the lack of intent to do the act at all (cit.), the two defenses are inconsistent. (Cits.)' (Emphasis supplied.) [Cit.]" *Stein*, supra at 813. As previously discussed, an exclusion such as the one here involved "is applicable if the insured acts with the intent or expectation that bodily injury occur, even if the actual, resulting, injury is different either in kind or magnitude from that intended or expected. [Cit.] Thus, there is a rec-

ognized distinction between intentional and unintentional results of intentional acts. "Intent" is defined in Restatement, Torts 2d, § 8A (1965) "to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." "On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent." [Cit.]' [Cit.]" *Brown*, supra at 216. Applying that general rule to the facts here, there was sufficient evidence that the shooting was the result of Eubanks' acting in self-defense, delusional though it might be, to create an issue proper for jury determination. " ' "Where there is any evidence, however slight, upon a particular point, it is not error for the court to charge the law in relation to that issue." (Cits.)' [Cit.]" *Kelley v. Foster*, 192 Ga. App. 95, 96 (3) (383 SE2d 646) (1989).

*Judgment affirmed. Pope and Beasley, JJ., concur.*

DECIDED APRIL 2, 1990 —
REHEARING DENIED APRIL 16, 1990 — 

*William R. McCracken*, for appellants.
*Hull, Towill, Norman & Barrett, George R. Hall, Neal W. Dickert*, for appellee.