A92A1416. J. B. HUNT TRANSPORT, INC. et al.
v. BENTLEY et al.
(427 SE2d 499)

Beasley, Judge.

J. B. Hunt Transport, Inc. ("Hunt") and Protective Insurance Co. ("Protective"), its insurer, appeal from the judgment entered on the jury's verdict, awarding compensatory and punitive damages resulting from an automobile accident caused when a truck driven by Hunt's employee, Lutter, collided with Bentley's parked automobile.

In 1989, Hunt was the largest trucking company in the country and had 4,500 drivers in its employ. Hunt operated on a "forced dispatch" system, meaning that a driver could not refuse a load. To do

so resulted in termination. Hunt's trucks averaged 135,000 miles per truck per year, 25 percent more miles per year than the industry average.

On August 29, 1989, Lutter was driving a 1989 tractor trailer rig for Hunt. He was being accompanied by his wife, with Hunt's permission. He had been hired in June 1989. Upon arriving at Hunt's Jonesboro terminal, Lutter completed a Vehicle Condition Report requesting service which indicated problems with the brakes and a "wobble" in the front end of the tractor. The tractor was taken off the road and put in for service at 2:30 a.m. on August 29. It was placed back on the road on the morning of August 30. Although there was evidence that Hunt's practice was to put drivers in a motel when the trucks were off the road for service, there was no specific evidence as to Lutter's whereabouts for that period.

Lutter, accompanied by his wife, took the tractor and a fully loaded trailer and headed north on Interstate 85 before noon. For approximately 10 to 20 miles, the Gallups and Brownlees followed the truck. They were afraid to pass because the truck was driving very erratically, swinging from left to right, going well off into the emergency lane across the solid white line and then veering back to the left across the center white broken line.

Near Jackson County, Georgia, the state Department of Transportation ("DOT") was involved in utility construction. For one-and-one-half miles before that construction there were three signs and orange cones on the right white line indicating that fact. Bentley, sitting in his DOT pickup truck, was parked behind a deputy sheriff's car. The deputy had his blue strobe lights on and the yellow flashing warning light on top of Bentley's truck was on. Bentley's truck was parked seven feet off the highway in the emergency lane.

Lutter veered to the left, then back to the right, hitting the deputy's car and Bentley's pickup truck. Lutter did not slow down when he entered the construction area, although he was not exceeding the 65 mph speed limit. Hunt's trucks were equipped with governors that were supposed to limit speed to 58 mph, but no records regarding the governor on this tractor were introduced. No brake lights were seen before the impact and no skid marks appeared before the crash, although there were about 30 to 35 feet of skid marks in front of Bentley's truck where the tractor trailer rig turned over after making contact.

Bentley suffered broken bones as well as a concussion. The concussion resulted in three hematomas which left him with organic brain damage. He suffered cardiac arrest during one of the three craniotomies which he had. He is unemployable and permanently disabled.

A suit against Lutter, Hunt and Protective, seeking both compen-

satory and punitive damages, was filed on October 31, 1990, by Bentley for his injuries, and by his wife on a cause of action for loss of consortium. The complaint alleged that Lutter's conduct within the scope of his employment for Hunt was the cause of the accident, and that Hunt was derivatively liable for the actions of its employee. Although the complaint alleged that Hunt's liability was derivative of Lutter's conduct, as tried by the parties, the case also raised the issue of whether Hunt was independently liable based on its own conduct. See OCGA § 9-11-15 (b).

Lutter remained a Hunt employee until October 30, 1989, when he was terminated because he was unable to return after a 60-day medical leave. No disciplinary action was taken against him by Hunt as a result of the accident.

Lutter was served under the provisions of OCGA § 40-12-1 et seq., the Nonresident Motorists Act. Hunt and Protective filed an answer for Lutter on his behalf, which was allowed after plaintiffs withdrew their objection, so the factual allegations in the complaint are not deemed true by default. He did not file an answer or make any appearance in the case. Hunt acknowledged liability for the acts of its employee Lutter, but contested punitive damages. The jury awarded Mason Bentley $2,975,000 in compensatory damages, and awarded his wife $575,000 in compensatory damages on her cause of action for loss of consortium. Utilizing a special verdict form, the jury also awarded Mason Bentley $1,250,000 in punitive damages against Lutter based on evidence of his conduct in the scope of his employment, and $250,001 in punitive damages directly against Hunt for its conduct independent of Lutter.

On her cause of action, Ms. Bentley similarly received punitive damages of $1,250,000 against Lutter for his conduct and $250,001 directly against Hunt. See *Stapleton v. Palmore*, 250 Ga. 259 (297 SE2d 270) (1982); *White v. Hubbard*, 203 Ga. App. 255, 256 (416 SE2d 568) (1992) (although an action by a wife for loss of consortium brought in the same suit with her husband's action for personal injuries is a derivative claim precluding inconsistent verdicts by the same jury, it is nevertheless a separate and distinct claim for relief).

During the trial, Hunt's corporate representative, B. J. Keller, director of casualty claims, testified that in February 1990, the company's copy of the driver's daily log, required by federal law to be maintained for six months, was destroyed in the normal course of business. This log would have shown the movements of the truck, as well as the activities of Lutter during the time the tractor was in the shop and whether he had violated the federal limits on length of time a driver could drive. The company copy of the log had been destroyed even though Hunt had retained the services of Equifax to conduct an investigation of the Bentleys in anticipation of litigation in January

before the log was destroyed in February. Evidence also showed that Hunt drivers had a history of repeated violations of the federal driving time limitations, but there was no direct evidence that Lutter was violating the time limitations when the accident occurred.

1. We consider first Hunt and Protective's fifth enumeration, that the court erred in qualifying the jury as to Protective since 100 percent of its stock is owned by Barton & Lyons and therefore, no juror could own stock in Protective.

A stipulation was entered into by the parties that Protective would remain a party to the case, bound by any judgment, but the jury would not be informed that it was a party and the bond and insurance policy would not be introduced into evidence. Appellants additionally objected to qualification as to Protective, contending that would improperly inject insurance into the suit. The premise for such an objection has, however, been resolved adversely to appellants in *Grissom v. Gleason*, 262 Ga. 374 (418 SE2d 27) (1992), by the Supreme Court's determination that the joinder provisions of OCGA § 46-7-12 (e) were not subject to the constitutional challenge there made. Hunt admitted in its answer that it was "a motor common carrier engaged in interstate commerce . . . [and] maintains the appropriate certificates of authority as required by the Georgia Public Service Commission." Since, absent the stipulation, it would have been permissible to leave the insurance company joined as a party, there is no error in merely qualifying the jury as to it. See *Ellerbee v. Interstate Contract Carrier Corp.*, 183 Ga. App. 828 (1) (360 SE2d 280) (1987).

As stated in *Grissom*, "[t]he differential treatment of motor carriers and other insured defendants is based on a rational distinction directly related to the purpose of the Motor Carrier Act. The statute's purpose is to protect the public against injuries caused by the motor carrier's negligence. . . . OCGA § 46-7-12 (b), (c), and (d). The carrier's insurance policy 'is not one of indemnity against loss as that term is generally understood(,) but is a direct and primary obligation to any person who shall sustain actionable injury or loss.' [Cit.] The injured person may sue the insurer directly on the insurance contract, as in an action against a surety on a surety bond. [Cits.]" *Grissom*, supra at 377.

2. Hunt and Protective moved for a directed verdict on the issue of punitive damages,[1] on the ground that the evidence supported only a finding of mere negligence, even though gross, which would not support the submission of the issue to the jury.

OCGA § 51-12-5.1 (b) provides that "[p]unitive damages may be

---

[1] That both Hunt and Lutter were subject to the imposition of punitive damages in some amount was determined in the first phase of the trial.

awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Subsections (f) and (g) state that "[i]n a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, there shall be no limitation regarding the amount which may be awarded as punitive damages. For any tort action not provided for by subsection . . . (f) of this Code section in which the trier of fact has determined that punitive damages are to be awarded, the amount which may be awarded in the case shall be limited to a maximum of $250,000.00."

The first and third enumerations of error deal with punitive damages awarded against Lutter, who was a co-defendant along with Hunt and Protective, but who is not a party to this appeal. Nevertheless, based on the allegations and evidence presented, the plaintiffs sought to impose derivative liability on Hunt and Protective for the punitive damages assessed against Hunt's employee, Lutter. See *Harris, Inc. v. Black*, 130 Ga. App. 867, 868 (204 SE2d 779) (1974) (employer is subject to derivative liability for punitive damages assessed as a result of actions taken by an employee in the scope of employment). Whether Lutter's actions justified an award of punitive damages, and the amount of such damages, were issues on which the plaintiffs carried the burden of proof at trial in seeking to impose derivative liability for these damages against Hunt and Protective. *Avis Rent A Car System v. Rice*, 132 Ga. App. 857, 858 (209 SE2d 270) (1974). The jury reached a verdict awarding punitive damages against Lutter based on evidence of his actions taken within the scope of his employment by Hunt. The trial court subsequently entered judgment on this verdict against Lutter and against Hunt on its derivative liability — a judgment also payable by Protective to the extent of its contractual obligation to pay such damages under the insurance policy issued to Hunt. Accordingly, Hunt and Protective have standing to appeal from the judgment.

" '(O)n appeal, we must construe the evidence most strongly to support the jury verdict and the judgment' [cit.]; likewise, in considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion. [Cit.] The standard for review of a directed verdict and a judgment n.o.v. are the same: 'Where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed.' [Cit.]" *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991); *Pendley v. Pendley*, 251 Ga. 30 (1) (302 SE2d

554) (1983). Our review is the "any evidence" standard. *Mattox*, supra. It is important to remember that this court does not consider the *weight* of the evidence. *Moultrie Farm Center v. Sparkman*, 171 Ga. App. 736, 738 (2) (320 SE2d 863) (1984).

As to the punitive damages assessed for Lutter's conduct within the scope of his employment by Hunt, enumerations 1 and 3 allege error in the court's denial of Hunt's motion for judgment n.o.v., because: (1) there was no clear and convincing evidence to support any award of punitive damages, and (2) in any event, there was no evidence of specific intent on which to base the jury's award of punitive damages for each plaintiff in excess of $250,000.

Viewed under the principles set out above, there was evidence from which the jury could have determined that, notwithstanding either a serious mechanical problem or serious physical problem or both, Lutter continued on the highway for at least 10 or 20 miles, veered off the roadway without braking, and struck Bentley's truck. Evidence of such "conscious indifference to consequences" supported the submission of the issue of punitive damages to the jury to determine according to the "clear and convincing" standard.

More difficult is the issue of whether such evidence supported the submission of the issue of "specific intent to cause harm" to the jury. This was not alleged in the complaint, although an unspecified amount of punitive damages was sought. Bentley relies on the rebuttable presumption that "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts. . . ." OCGA § 16-2-5. This court implicitly rejected that theory in *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801 (418 SE2d 604) (1992), and we explicitly reject it here.

As was stated in *Viau*, supra at 805, "Dean intended to drink, he intended to drive after he had done so and, while driving, he intended to exceed the speed limit. This would certainly be evidence of his *general* conscious indifference to the consequences of driving while intoxicated and would certainly authorize a finding that he was liable for punitive damages. However, it would not be evidence of his *specific* intent that driving in his intoxicated condition cause harm. Intent is defined in Restatement, Torts 2d, § 8A (1965) to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it. On the other hand, the mere knowledge and appreciation of a risk, short of a substantial certainty, is not the equivalent of intent. *Eubanks v. Nationwide &c. Ins. Co.*, 195 Ga. App. 359, 364 (4) (393 SE2d 452) (1990)." (Emphasis in original; citations and punctuation omitted.)

Given the present facts, we conclude there was no evidence that Lutter acted with specific intent to cause harm. In the absence of sufficient evidence to show that Lutter acted with specific intent, there

was no basis to award Mason Bentley more than $250,000 in punitive damages on his claim, and no basis to award his wife more than $250,000 in punitive damages on her separate cause of action for loss of consortium. The punitive damages awarded against Lutter in favor of Mason Bentley in the sum of $1,250,000 must be reduced to $250,000; likewise, the punitive damages awarded against Lutter in favor of Ms. Bentley in the sum of $1,250,000 must be reduced to $250,000.

3. The second and fourth enumerations of error address punitive damages awarded against Hunt, not on the basis of derivative liability for Lutter's conduct, but because of Hunt's independent actions. Appellants contend that the evidence with respect to the independent actions of Hunt was not only insufficient to show that Hunt acted or failed to act with specific intent to cause harm, but failed to support an award of punitive damages in any amount.

As in the case of Lutter, the jury assessed these damages "because of aggravating circumstances in order to penalize, punish, or deter [Hunt]." OCGA § 51-12-5.1 (a). The jury was charged the standard which it was required to employ in considering whether such damages were authorized, and in its estimation there was "clear and convincing evidence that [Hunt's] actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." OCGA § 51-12-5.1 (b).

"Under OCGA § 51-12-5.1 (b) . . . it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. . . ." (Citations and punctuation omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811) (1991). "Mere negligence, although gross, will not alone [support] the recovery of punitive damages." (Citations and punctuation omitted.) *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 861 (1) (389 SE2d 355) (1989).

The practices of Hunt showed that it did not abide by required safety regulations. It was a "habitual violator" of the hours-in-service requirements of the Georgia Public Service Commission for its vehicles. Commission inspection of 236 of its vehicles over 3 years showed one-third (76) in logbook violations which were penalized because of driver excessive driving. It operated a "forced dispatch" system, under which drivers could be fired for refusing a load. The driver's logbook was destroyed by Hunt after its investigation of the incident had already begun. It would have given information concerning his hours of driving and his hours of non-driving and off-duty time, which would show whether he exceeded the permitted driving time. It would also show speed. Considering its destruction by Hunt, it was a reasonable presumption that the logbook showed that the driver was

compelled by Hunt to drive with insufficient rest. OCGA § 24-4-22. This would be a contributing factor, or the cause, of his sustained weaving from lane to lane, failing to slow the fully loaded tractor-trailer from 65 mph despite the warnings of construction ahead and, without braking to avert collision, plowing into a readily visible vehicle parked off the roadway.

The pre-trip and post-trip vehicle inspection report was also destroyed by Hunt. It shows the condition of the vehicle, according to an inspection by the driver of the tires, brakes, lights, steering, etc. Considering its destruction, and the fact that the vehicle was taken off the road the day before because of operational defects, and the absence of testimony by those mechanics who had worked on it before it was returned to the road, it was a reasonable presumption that the report would have shown that the tractor-trailer was not in safe condition to be driven on the interstate highway. OCGA § 24-4-22. This, too, would be a contributing factor, or the cause, of the erratic driving which resulted in the collision.

Hunt also failed to produce the driver or the passenger as witnesses to explain the manner of driving, including the continuous swerving for 10-20 miles, raising a presumption that their testimony would have been adverse to Hunt's interest in avoiding liability for punitive damages.

From these circumstances, the jury could find, by applying the clear and convincing evidence standard, that Hunt exhibited a conscious indifference to the consequences of putting a tired driver, at the risk of losing his job if he did not comply, and/or a defective tractor-trailer out on the highway, with a schedule for delivery which prompted maintaining the maximum allowable speed even in construction areas. This constituted a sufficient basis for the "aggravating circumstances" which the jury found as the predicate for punitive damages against Hunt.

The trial court did not err in denying the motion for judgment n.o.v. as to the amount of $250,000. However, we find no evidence of "specific intent to harm" which would support the $2 in punitive damages for that factor.

4. Since the evidence with respect to the conduct of Lutter and Hunt failed to authorize a finding of specific intent to cause harm, it follows that the trial court erred in giving plaintiffs' requests to charge numbers 46 and 47 (enumerations 7 and 8) regarding specific intent under OCGA § 51-12-5.1 (f), (g). See OCGA § 5-5-24 (c).

5. Admission of the 1990 Financial Report of Hunt and its Form 10K submission to the Securities & Exchange Commission is objected to in the sixth enumeration.

The consideration of the financial documents occurred during the second phase of the trial, after the jury had determined that punitive

damages should be assessed. Appellants contend that to allow receipt of evidence of Hunt's financial worth would be violative of equal protection under the plurality analysis of *Denton v. Con-Way Southern Express*, 261 Ga. 41 (402 SE2d 269) (1991). That rationale is discounted, however, by *Grissom*, supra, at least with regard to differential treatment of motor carriers and other insured defendants. Moreover, that such financial information is at least discoverable with regard to punitive damages is no longer open to question. *Floyd v. First Union Nat. Bank*, 203 Ga. App. 788, 791 (2), (3) (417 SE2d 725) (1992).

The extensive argument presented here based upon *Pacific Mutual Life Ins. Co. v. Haslip*, ___ U. S. ___ (111 SC 1032, 113 LE2d 1) (1991), was not made at all during the trial of the case, and the case was first cited to the trial court in the brief on the motion for j.n.o.v.[2] That argument was that "[t]here was no instruction to the jury in Phase II that the imposition of punitive damages is not compulsory, as required by *Pacific Mutual* . . . , in order for punitive damages to be constitutional. Instead, the jury was directed to find some amount as punitive damages in Phase II."

That argument is not well taken. Reading the entire instructions of the court on the issue of punitive damages, as we must when evaluating the charge, *Joiner v. State*, 204 Ga. App. 592, 593 (2) (420 SE2d 73) (1992), the jury was told that it had the option of imposing punitive damages. The charge was not subject to that objection.

That financial evidence is relevant and admissible was recognized by *Hospital Auth. of Gwinnett County v. Jones*, 259 Ga. 759, 764, fn. 13 (386 SE2d 120) (1989), cert. granted and judgment vacated (111 SC 1298, 113 LE2d 234) (1991), judgment aff'd and reinstated on remand, 261 Ga. 613 (409 SE2d 501) (1991). Cf. *Floyd*, supra at 791.

6. In light of our disposition of the case, enumeration of error 9 is moot and need not be addressed.

*Judgment affirmed with direction that punitive damages against Lutter and against Hunt in excess of $250,000 for specific intent to harm be written off. Carley, P. J., Pope, Cooper and Johnson, JJ., concur. Sognier, C. J., Birdsong, P. J., and Andrews, J., concur in part and dissent in part. McMurray, P. J., not participating.*

ANDREWS, Judge, concurring in part and dissenting in part.

I concur in the judgment and opinion with the exception of Division 3, to which I respectfully dissent.

Appellants contend that the evidence with respect to the independent actions of Hunt was not only insufficient to show that Hunt

---

[2] The *Pacific Mutual* opinion was issued by the Supreme Court on March 4, 1991, before the August 1991 trial of this case.

acted or failed to act with specific intent to cause harm, but failed to support an award of punitive damages in any amount. In support of their claim, the plaintiffs presented evidence that Hunt was a habitual violator of federal limits placed on driver's hours; that Hunt used a "forced dispatch" system, which allegedly required drivers, such as Lutter, to accept loads even though they may have been too tired to drive, and that the driver's log destroyed by Hunt would have shown whether or not Lutter was violating the federal time limits for driving at the time of the accident.

Even if the failure of Hunt to produce the driver's log raised a presumption against Hunt pursuant to OCGA § 24-4-22, I conclude that this, along with the other evidence of Hunt's independent conduct was not clear and convincing evidence required by OCGA § 51-12-5.1 (b) for the award of punitive damages. "Under OCGA § 51-12-5.1 (b) . . . it remains the rule that something more than the mere commission of a tort is always required for punitive damages. There must be circumstances of aggravation or outrage. . . ." (Punctuation omitted.) *Ivey v. Golden Key Realty*, 200 Ga. App. 545 (1) (408 SE2d 811) (1991). "Mere negligence, although gross, will not alone [support] the recovery of punitive damages." (Citations and punctuation omitted.) *Petrolane Gas Svc. v. Eusery*, 193 Ga. App. 860, 861 (1) (389 SE2d 355) (1989). Although the "any evidence" rule cited by the majority as the standard of review on appeal from a directed verdict or judgment n.o.v. is technically correct and supported by authority, it is potentially misleading in that it may imply the appellate court will defer to the trial judge's determination. In reviewing a motion for directed verdict or judgment n.o.v., both the trial judge and the appellate court determine as a matter of law whether the evidence was sufficient under the same standard: "If there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed." OCGA § 9-11-50 (a). The only question asked by the appellate court is whether the trial judge was right or wrong in applying this standard. See Gregory, Ga. Civil Practice, § 6-17, p. 505 (1990). Of course, under OCGA § 51-12-5.1 (b), if a material issue exists, it must be with respect to clear and convincing evidence.

The plaintiffs' theory was that the factual circumstances of the accident support the inference that Lutter must have been asleep or barely awake when, after weaving down the interstate, he slammed into Bentley's truck in broad daylight without hitting the brakes. To shift the blame for this conduct to Hunt, plaintiffs pointed to Hunt's "forced dispatch" system and history of repeated violations by other Hunt drivers of the federal driving time limits. The plaintiffs contend that this is evidence Lutter was asleep or too tired to drive; that the

destroyed logbook would have shown Lutter had been driving too long, and that Hunt's policies were the cause of these conditions, which in turn were the cause of the accident. There was no direct evidence that Lutter was tired or asleep, or that if he was, this condition was the result of conduct by Hunt. I cannot conclude on the present facts that these inferences and the circumstantial evidence from which they were drawn are sufficient to create a material issue with respect to the clear and convincing evidence necessary to support the award of punitive damages.

The trial court erred by allowing the assessment of punitive damages directly against Hunt for its conduct independent of Lutter in favor of Mason Bentley in the sum of $250,001, and in favor of Ms. Bentley in the sum of $250,001. These sums should be written from the judgment in their entirety.

I am authorized to state that Chief Judge Sognier and Presiding Judge Birdsong join in this dissent.

DECIDED DECEMBER 18, 1992 —
RECONSIDERATION DENIED FEBRUARY 5, 1993 —

*Hurt, Richardson, Garner, Todd & Cadenhead, Harold N. Hill, Jr.*, for appellants.

*Bondurant, Mixson & Elmore, Emmett J. Bondurant, George W. Fryhofer III, Michael A. Sullivan, Fortson, Bentley & Griffin, J. Edward Allen*, for appellees.