Robert P. ERICKSON, Respondent,

v.

Dennis HOLLAND, d.b.a. Holland Trucking, Respondent,

Curtis of Iowa, Inc. et al., Relators,

State Treasurer, Custodian of Special Compensation Fund, Respondent.

No. 50236.

Supreme Court of Minnesota.

July 3, 1980.

Hansen, Dordell & Bradt and Gene P. Bradt, St. Paul, for relators.

Benshoof, Hummel, Sinclair, Schurman, Pearson & Evans and Joseph A. Evans, Detroit Lakes, for Erickson.

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow and Richard C. Hefte, Fergus Falls, for Holland.

Warren Spannaus, Atty. Gen., and Thomas G. Lockhart, Spec. Asst. Atty. Gen., for State Treasurer.

ROGOSHESKE, Justice.

Curtis of Iowa and its workers' compensation insurer seek review of a decision of the Workers' Compensation Court of Appeals awarding compensation to Robert Erickson for disability resulting from an injury he sustained in a fall while taking a test intended to demonstrate his ability to operate a tractor leased by Curtis from Dennis Holland. Our review of the record requires us to reject relators' contention that as a matter of law Erickson was not Curtis' employee at the time of the accident and to conclude that there is substantial evidentiary support for the finding that he was.

Bearing on the issue of the disputed employment relationship is a lease between Curtis, a certified motor carrier based in Sioux City, and Holland, a resident of Barnesville, Minnesota, and the owner of a fleet of tractors which he leased to Curtis. The lease provided that Holland could drive a tractor himself, if qualified, and could hire drivers for his equipment "subject to approval by Curtis," and that Holland agreed "to comply, or cause compliance with all rules promulgated by Curtis, and to follow the provisions set forth in any Manual of Instructions or Bulletin that may be issued by Curtis from time to time." The lease also provided that Holland would pay for fuel, maintenance and operating costs of the tractors and would pay the drivers' wages. With respect to workers' compensation insurance for the drivers of Holland's tractors, the lease permitted Curtis to furnish such insurance and deduct its cost from sums due Holland. Both Holland and Curtis retained the right to discharge drivers.

Pursuant to the lease Holland himself recruited drivers and then sent them to Curtis, who usually required that an application form be filled out and then conducted a training session, a written test about "road rules," and a performance test in which applicants demonstrated their ability to handle and drive a tractor-trailer unit.

Erickson, a truckdriver living in northwestern Minnesota, sought employment from Holland early in January 1977. Erickson testified that he filled out an applica-

tion form because he "was trying to get on with Curtis" and expressed concern to Holland about several speeding violations which Erickson feared might cause Curtis to reject his application. Holland contacted Curtis by telephone and was told that if Erickson met Curtis' other qualifications he would be hired on a 30-day probationary status and would become a permanent employee at the end of that time if he had not been charged with violations during that period. Erickson agreed that he understood that Holland did not have authority to hire him for Curtis and that he would have to pass the tests administered by Curtis. He had had a physical examination in September 1975 and then obtained a permit from the Interstate Commerce Commission allowing him to drive for 2 years. He was certain that he had shown this permit to Holland.

A few days later Holland telephoned Erickson, saying that he should "come down and go to work." He did so the following day, and Holland directed him to go to Sioux City to attend the training session and take the employment tests. Erickson said he was told to drive a Holland-owned truck which Holland assigned to him and in which he placed his own CB radio. Erickson also testified that Holland telephoned Curtis to inquire if Curtis wanted a trailer in the Twin Cities area to be brought down to Sioux City, and Erickson himself then talked to "Keith," a safety man at Curtis, and received instructions to pick up the trailer and bring it to Sioux City. Erickson said he asked Keith if this meant that "I was going to go to work for him and how everything went and he said everything checked out. I just had to come down and take the test." He also said that Holland said he would receive 12 cents a mile and gave him credit cards and $10 in cash. Another driver, Ben Borstad, also wanted to take Curtis' tests so that he could drive another truck under lease to Curtis, so Borstad and Erickson left Barnesville in Holland's tractor on January 13.

Holland testified that he let Erickson and Borstad take the truck so they would not have to furnish their own transportation, that Borstad "rode along with Mr. Erickson," and that he gave Erickson the credit cards so that if he was cleared in Sioux City he could immediately go wherever Curtis directed. Holland could not recall whether Erickson filled out an application form, whether anyone from Curtis talked to him on the telephone, or whether they discussed payment for the trip to Sioux City. Had Erickson been qualified by Curtis, however, Holland said that he would have paid Erickson for the trip.

Richard Frank, Curtis' president, gave testimony which was in direct conflict with Erickson's on several points. He denied that Curtis ever received an application form from Erickson and said that a Curtis dispatcher gave detailed instructions to Borstad rather than to Erickson about picking up the trailer. He said that Erickson had been permitted to ride along merely as a convenience, that Borstad had been accepted as a driver prior to January 13, although he had not taken the tests, and that Curtis would not have permitted a driver who had not been accepted as qualified to pick up the trailer.

Erickson and Borstad went to St. Paul in Holland's tractor, a detour of about 200 miles, and Erickson said he drove most of the time. There they found that they could not attach the trailer they had been directed to pick up because the tractor needed repairs. After having the repairs made, Erickson called Holland for money to pay for them but was told to call Curtis. He did so, and Curtis wired a sum to him which exceeded the repair bill by $40. Erickson retained the excess. A Curtis dispatcher then directed Erickson and Borstad to pick up a different trailer with a load of meat products and bring it to Sioux City. The men did so, arriving late in the day on January 14. They were then told to return the next morning for the training session and tests, and Erickson said he was told by a Curtis representative that he should take the trailer of meat they had brought to Sioux City on to San Francisco as soon as he had taken the performance test.

The next morning Erickson took and passed the written test. During the performance test he fell, injuring his back. His need for surgery thereafter, the duration of his temporary total disability, and the extent of his permanent partial disability are not disputed.

Frank testified that prospective employees must fill out an application form which includes questions about past driving record, work record, and medical history. He said that if the answers on the form do not eliminate the applicant, the general procedure is to have him undergo physical examination by the company physician and then be given a written test and a performance test. He said an applicant will be rejected if the application reveals history of back injury (which employee had). He also said that Curtis requires back X-rays before accepting applicants and that this policy was in effect in January 1977. Holland testified, however, that he had qualified to drive for Curtis by taking the written and performance tests but had never received a physical examination because he had shown them a copy of the examination he had undergone to obtain an ICC driver's permit. Frank admitted that Borstad had been accepted as a driver as of January 10, 1977, before he had taken a physical examination or the tests because "[f]rom our initial pre-check [the application form and reports of telephone inquiries to former employers] we had enough on file to go ahead and clear him."

After reviewing this evidence the Workers' Compensation Court of Appeals vacated the finding of the compensation judge that Erickson was Holland's employee when injured and found instead that he was Curtis' employee under both an express and implied contract. Relators challenge this determination, claiming that as a matter of law no contract existed between Curtis and Erickson at the time of the accident. They contend that there are no material disputed facts.

We are compelled to reject this claim. The evidence is in direct conflict with respect to Erickson's role on the trip from Barnesville to Sioux City. Frank testified that Erickson was merely a passenger, with Borstad the driver and the person who had been instructed to pick up the trailer en route. In contrast, Erickson testified that Holland assigned the tractor they used to him as the tractor he would drive for Curtis; that Curtis directed him to pick up the trailer and told him that "everything checked out" and he "just had to come down and take the test;" that Curtis subsequently wired him money for the repair in St. Paul and then directed him to pick up the trailer of meat and bring it to Sioux City; and that, once there, Curtis told him that as soon as he had passed the performance test he should take the load on to San Francisco. Moreover, in spite of Frank's testimony that Curtis required drivers to undergo physical examinations, the written test, and the performance test before accepting them, his own testimony showed that Borstad was accepted as a driver prior to having fulfilled these requirements, and Holland's testimony was that he had never been required to undergo Curtis' physical examination.

 It is clear that if Erickson's testimony is credited, from the moment he left Barnesville he was performing services for Curtis for which he reasonably expected to receive payment and did in fact receive $40. His activities were under the supervision and control of Curtis, and the evidence clearly permits the inference that an implied contract of hire came into existence when the trip began. Erickson was thus an employee and Curtis an employer within the meaning of Minn.Stat. §§ 176.011(9) and 176.011(10) (1978). Relators contend that, assuming the existence of a contract, it was completed when Erickson arrived in Sioux City. The evidence, however, permits the further inference that neither party contemplated termination of the contract unless Erickson failed to meet Curtis' requirements. At the time of his injury that contract had not been terminated.

 Relators claim, nevertheless, that Erickson was not performing substantial services for Curtis when he was injured and

point to the admitted fact that he did not expect payment for taking the tests. Curtis' interest in obtaining well-qualified drivers was plainly furthered by Erickson's participation in the tests, however, and it is reasonable to infer that his doing so conferred a substantial benefit upon Curtis in view of their objective. The fact he did not expect payment for the tests does not seem significant in light of the fact that they were preliminary to work for which he did expect payment.

Respondent Erickson is awarded $600 attorneys fees.

Affirmed.