598 N.W.2d 557 (1999)
1999 SD 106
Jeanette STOEBNER, Plaintiff and Appellee,
v.
SOUTH DAKOTA FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant and Appellant.
No. 20577.
Supreme Court of South Dakota.
Argued March 22, 1999.
Decided August 11, 1999.
Timothy L. James of James & Associates, P.C., Yankton, South Dakota, Attorneys for plaintiff and appellee.
Mark D. O'Leary, Sioux Falls, South Dakota, Attorney for defendant and appellant.
SABERS, Justice
[¶ 1.] Farm Bureau appeals a summary judgment that it breached a duty to defend. Finding genuine issues of material fact, we reverse and remand for trial.

FACTS
[¶ 2.] On May 26, 1991, an altercation occurred between Jeanette Stoebner and her daughter-in-law, Lori Gregerson, at Gregerson's home. Gregerson later filed a complaint claiming Stoebner committed intentional torts of assault and battery. Stoebner claimed that she acted in self-defense.
[¶ 3.] On the date of the altercation, Stoebner was insured by Farm Bureau. She submitted the defense of Gregerson's claim to Farm Bureau. It refused to defend *558 asserting that the claim was excluded under the intentional acts exclusion of the policy. Stoebner hired an attorney and the case of Gregerson v. Stoebner proceeded to trial. The jury returned a defense verdict in favor of Stoebner on July 23, 1997.
[¶ 4.] Stoebner filed a complaint against Farm Bureau on June 26, 1997 claiming breach of contract, bad faith, negligent and intentional infliction of emotional distress, and breach of a duty to defend. Stoebner sought punitive damages. Both parties filed motions for summary judgment supported by exhibits, including depositions, copies of letters denying coverage, and portions of the trial transcript.
[¶ 5.] The trial court found that self-defense is an exception to the intentional acts exclusion. It concluded that because Farm Bureau had knowledge of Stoebner's claim of self-defense, it had a duty to defend. Therefore, the trial court granted Stoebner summary judgment on her breach of a duty to defend claim. It granted Farm Bureau summary judgment on the bad faith and emotional distress claims. Farm Bureau appeals.

STANDARD OF REVIEW
[¶ 6.] Our standard of review for summary judgment is well established:
In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper.
Weiss v. Van Norman, 1997 SD 40, ¶ 9, 562 N.W.2d 113, 115 (quoting Lamp v. First Nat'l Bank of Garretson, 496 N.W.2d 581, 583 (S.D.1993) (citation omitted)).

[¶ 7.] GENUINE ISSUES OF MATERIAL FACT EXIST WHETHER STOEBNER WAS ACTING FOR THE PURPOSE OF PREVENTING INJURY TO HERSELF OR FOR THE PURPOSE OF INTENDING INJURY TO GREGERSON.
[¶ 8.] The trial court found that Farm Bureau had a duty to defend Stoebner because her claim of self-defense established the possibility of coverage. The trial court found that "[b]ecause there is generally not an intent to injure when acting in self-defense, self-defense is an exception to the exclusions relied on by Farm Bureau." It further found that, although the complaint against Stoebner alleged intentional torts which would be excluded from coverage under the intentional acts exclusion, Farm Bureau had actual knowledge of Stoebner's claim of self-defense. After reviewing the motions and exhibits submitted by the parties, the trial court granted summary judgment that Farm Bureau breached its duty to defend.
[¶ 9.] The insurance policy that Farm Bureau issued to Stoebner provides:
We cover:
If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
a. pay up to our limit of liability for the damages for which the insured is legally liable; and
b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
An occurrence is defined in the policy as "an accident, including continuous or repeated exposure to conditions." A definition *559 of "accident" is not provided. The policy excludes coverage for bodily injury or property damage "which is expected or intended by the insured[.]"
[¶ 10.] To claim that no duty to defend exists, Farm Bureau must show that the claim clearly falls outside of Stoebner's policy coverage. Hawkeye-Security Ins. Co. v. Clifford, 366 N.W.2d 489, 492 (S.D. 1985) (citations omitted). "If, after considering the complaint, and when appropriate, other record evidence, doubt exists whether the claim against the insured arguably falls within policy coverage, such doubts must be resolved in favor of the insured." Id. Although Gregerson's complaint alleged intentional torts of assault and battery, Farm Bureau knew that Stoebner claimed she acted in self-defense. Therefore, the issue is whether Stoebner acted in self-defense and whether Farm Bureau breached its duty to defend under the policy.
[¶ 11.] Farm Bureau claims that this case is controlled by Hawkeye-Security and that if there is no judgment to pay, then there is no duty to defend. We disagree. Farm Bureau ignores that in Tri-State Co. of Minnesota v. Bollinger, 476 N.W.2d 697, 701 (S.D.1991) we stated that "an insurer's duty to defend and a duty to pay are on a totally independent footing" and "[a]n insurer's duty to defend and its duty to pay on a claim are severable and independent duties." State Farm Mut. Auto. Ins. Co. v. Wertz, 540 N.W.2d 636, 638 (S.D.1995) (citing Hawkeye-Security, 366 N.W.2d at 490). "`The duty to defend is much broader than the duty to pay a judgment rendered against the insured.'" Wertz, 540 N.W.2d at 638 (quoting Hawkeye-Security, 366 N.W.2d at 490). "The insurer bears the burden of showing that it has no duty to defend its insured." Id. (citing North Star Mut. Ins. Co. v. Kneen, 484 N.W.2d 908, 912 (S.D.1992)).
[¶ 12.] Farm Bureau argues that, even if Stoebner acted in self-defense, her actions constituted deliberate acts that fall within the policy's intentional acts exclusion. However, the critical question is not whether Stoebner intended to act, but rather whether she intended to inflict the resulting injuries that Gregerson claimed to suffer. Wertz, 540 N.W.2d at 639. "`Most, if not all, negligently inflicted injuries or damages result from intentional acts of some kind, but coverage still exists under normal [insurance] policy provisions if there was no intention to cause, by the commission of the acts, the resulting injuries or damages.'" Id. (alteration in original) (quoting Snyder v. Nelson, 278 Or. 409, 564 P.2d 681, 683 (1977)). "An insurance policy exclusion for a loss caused intentionally by an insured applies only when the insurance company is able to show that the insured acted for the purpose of causing the loss." Wertz, 540 N.W.2d at 642 (Sabers, J., concurring specially). "That is, the loss itself must be intended before the exclusion will apply." Id.
Injuries are accidental or the opposite for the purposes of indemnity according to [the] quality of the results rather than the quality of the causes. The field of exclusion would be indefinitely expanded, if the [insurer's] argument were pursued to the limit of its logic. Every act, if we exclude, as we must, gestures or movements that are automatic or instinctive, is willful, when reviewed in isolation and irrespective of its consequences.
Bollinger, 476 N.W.2d at 701 (second alteration in original) (quoting Messersmith v. American Fidelity Co., 232 N.Y. 161, 133 N.E. 432 (1921)).
[¶ 13.] While the policy excludes an act which is "expected or intended by the insured," self-defense does not always fall within this type of policy exclusion. A genuine claim of self-defense is consistent with "accident" in that it is an event which must be by definition "an undesigned, sudden, and unexpected event ... and often accompanied by a manifestation of force." Taylor v. Imperial Cas. & Indem. Co., 82 S.D. 298, 302-03, 144 N.W.2d 856, 858 *560 (1966). Here, there is some doubt whether Stoebner's claim of self-defense falls within the policy exclusions.
[¶ 14.] Other courts have found that acts committed in self-defense are not expected or intended acts within the meaning of insurance policies exempting bodily injuries or property damage expected or intended by the insured.[1]Safeco Ins. Co. of America v. Tunkle, 997 F.Supp. 1356, 1360 (D.Mont.1998); Western Fire Ins. Co. v. Persons, 393 N.W.2d 234, 237 (Minn.App. 1986); Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636, 641 (1981); Preferred Mut. Ins. Co. v. Thompson, 23 Ohio St.3d 78, 491 N.E.2d 688, 691 (1986). "One who has acted in self-defense has not used insurance coverage as a license to commit wanton and malicious acts. In fact, someone properly acting in self-defense is, by definition, not acting unreasonably." Western Fire, 393 N.W.2d at 237. A person acting in self-defense is not engaging in the type of conduct that intentional acts exclusions are intended to discourage. Id.
[¶ 15.] Stoebner made a colorable claim of self-defense, which may have been accepted by the jury, and, under the facts of this case, there appears to be no showing that Stoebner intended anything other than self-defense. However, the jury verdict for defendant Stoebner could also mean that she intentionally assaulted Gregerson but that Gregerson failed to prove her damages. No interrogatories concerning Stoebner's intent were submitted to the jury in the first trial. Even at this point, there has been no determination by a fact finder whether Stoebner intended harm or self-protection and genuine issues of material fact exist whether Stoebner acted to prevent injury to herself or intended injury to Gregerson. Allstate Inc. Co., 313 N.W.2d at 640-41.
[¶ 16.] Therefore, we reverse summary judgment and remand for trial.
[¶ 17.] GILBERTSON, Justice, concurs with a writing.
[¶ 18.] AMUNDSON, Justice, concurs specially.
[¶ 19.] MILLER, Chief Justice, and KONENKAMP, Justice, dissent.
GILBERTSON, Justice (concurring).
[¶ 20.] "The insurer must show that the claim clearly falls outside the policy coverage." State Farm Mut. Auto. Ins. Co. v. Wertz, 540 N.W.2d 636, 638 (S.D.1995). See also Hawkeye-Security Ins. Co. v. Clifford, 366 N.W.2d 489, 492 (S.D.1985). The policy written by Farm Bureau provides coverage for "an occurrence" which is subsequently defined in part as an "accident." Although it could have defined what constitutes an "accident," Farm Bureau chose not to do so. We have defined the word "accident" in the liability insurance policy context to be, "an undesigned, sudden and unexpected event, usually an afflictive or unfortunate character, and often accompanied by a manifestation of force." Wertz, 540 N.W.2d at 639 (citing Taylor v. Imperial Casualty & Indemnity Co., 82 S.D. 298, 302-03, 144 N.W.2d 856, 858 (1966)).
*561 [¶ 21.] Here the insured, Stoebner, was sued by Gregerson for the intentional torts of assault and battery. Stoebner responded she acted in self-defense. What are the legal parameters of the defense she raised in her answer? In the criminal context we have defined it as not allowing a person claiming self-defense to design in advance this claim by creating a situation such as a quarrel or combat so as to make an intended injury appear as to have been done in self-defense. See generally State v. Fields, 488 N.W.2d 919 (S.D.1992); State v. Frey, 440 N.W.2d 721 (S.D.1989); State v. Miskimins, 435 N.W.2d 217 (S.D.1989); State v. Keliher, 46 S.D. 484, 194 N.W. 657 (1923).
[¶ 22.] While the policy excludes an act which is "expected or intended by the insured," self-defense as defined above does not always fall within this type of policy exclusion. A genuine claim of self-defense is consistent with that of an "accident" in that it is an event, which must be by definition "an undesigned, sudden and unexpected event ... and often accompanied by a manifestation of force."
[¶ 23.] There exists a question of fact as to whether the claim against Stoebner falls within the policy coverage and both sides are entitled to place their evidence on this point before the fact finder.
AMUNDSON, Justice (concurring specially).
[¶ 24.] The posture of this case is such that at the present time there is a record of what transpired at the trial of the underlying civil case. The trial court should have the opportunity to consider the total record, as would be the case if a declaratory judgment action had been filed before the actual trial. Upon review of Gregerson's testimony on the underlying action, it seems apparent that the jury could have found her totally incredible and her claim for damages specious, awarding her zero damages, even though there was an assault by Stoebner. However, since the trial court made no specific determination on Stoebner's claim of self-defense, genuine issues of material fact exist and the case must be remanded to the trial court for a hearing on whether Stoebner acted in self-defense or intentionally. Continental Grain Co. v. Heritage Bank, 1996 SD 61, ¶ 16, 548 N.W.2d 507, 511; Great West Cas. Co. v. Bergeson, 1996 SD 73, ¶ 11, 550 N.W.2d 418, 421.
MILLER, Chief Justice (dissenting).
[¶ 25.] I respectfully dissent. I would join the majority of jurisdictions that hold that Stoebner's claim of self-defense, in and of itself, did not give rise to the duty to defend.
[¶ 26.] Initially, however, I must write to express my concern and frustration as to the procedural posture of this case. As the majority notes, this case was commenced after a jury trial and defendant's verdict in the civil assault and battery litigation. Having succeeded in that litigation, Stoebner subsequently brought this action against Farm Bureau, her homeowner insurance carrier, claiming breach of contract, bad faith, negligent and intentional infliction of emotional distress, and breach of duty to defend.
[¶ 27.] Typically, and most appropriately, the issue regarding an insurer's duty to defend arises in a separate declaratory judgment action, preceding a trial on the underlying damage action. All of the recent, relevant cases presented to this Court were so postured. See, e.g., State Farm Mut. Auto. Ins. Co. v. Wertz, 540 N.W.2d 636 (S.D.1995); Tri-State Co. v. Bollinger, 476 N.W.2d 697 (S.D.1991); Hawkeye-Security v. Clifford, 366 N.W.2d 489 (S.D.1985). It is unfortunate that neither party, especially Farm Bureau, sought to have this issue appropriately resolved earlier.
[¶ 28.] Additionally, I am troubled by the majority's statement of the issue before this Court. The majority frames the issue as "whether genuine issues of material fact exist whether Stoebner was acting for the *562 purpose of preventing injury to herself or for the purpose of intending injury to Gregerson." See ¶ 7. I do not believe that is the issue before us. As I understand the record, and as is stated by the majority, the trial court concluded that, because Farm Bureau had actual knowledge of Stoebner's claim of self-defense, it had a duty to defend.[2] Thus, it is clear to me that the court's summary judgment decision was not based upon whether Stoebner acted in self-defense, but rather was based upon whether her claim of self-defense implicated Farm Bureau's duty to defend the action. Therefore, I believe the only issue we must review is whether Stoebner's self-defense claim created a duty to defend.
[¶ 29.] The majority of other jurisdictions considering the duty to defend when self-defense has been claimed have held that no duty arises under those circumstances. See, e.g., Allstate Ins. Co. v. Simms, 597 F.Supp. 64 (D.Or.1984) (coverage precluded by the intentional injury policy exclusion, even if act was in self-defense); State Farm Fire and Cas. Co. v. Caldwell, 630 So.2d 668 (Fla.App. 4 Dist. 1994) (punch thrown in self-defense does not establish that it had no purpose to injure); Eubanks v. Nationwide Mut. Fire Ins. Co., 195 Ga.App. 359, 393 S.E.2d 452 (1990) (self-defense claim does not remove the act from the policy's intentional acts exclusion); Stein v. Massachusetts Bay Ins. Co., 172 Ga.App. 811, 324 S.E.2d 510 (1984) (self-defense claim "may raise the criminal defense of justification for an intentionally caused injury, [but] it does not vitiate the actual intent to cause the injury"); Heshelman v. Nationwide Mut. Fire Ins. Co., 412 N.E.2d 301 (Ind.Ct.App.1980) (self-defense claim is a justification for actions, not an inference that an act was unintentional); Auto-Owners Ins. Co. v. Harrington, 455 Mich. 377, 565 N.W.2d 839 (1997) (excepting "injurious action taken in self-defense from the intentional-acts exclusion would impermissibly disregard the clear language of the exclusion in the contract between insurer and insured"); Erie Ins. Group v. Buckner, 127 N.C.App. 405, 489 S.E.2d 901 (N.C.App.1997) (self-defense claim "does not negate the element of intent for a particular act"); Espinet v. Horvath, 157 Vt. 257, 597 A.2d 307 (1991) (injury inflicted by act taken in self-defense may be expected and/or intended); Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 776 P.2d 123 (1989) (court refused to rewrite policy to find self-defense claim to be an exception to the intentional acts exclusion). Although the majority opinion refuses to adopt their rationale, I find it persuasive and believe a subjective inquiry into the insured's intent or expectation must be required when the insured asserts a claim of self-defense. See Harrington, 565 N.W.2d at 842.
[¶ 30.] Here, the trial court determined that because Farm Bureau possessed actual knowledge of Stoebner's self-defense claim, it had a duty to defend. It is not clear on what basis the judge made that determination. If it was based exclusively on the self-defense pleading, I assert the judge erred. If summary judgment was premised upon all of the evidentiary facts that were presented to the jury at the trial of the underlying tort action, again I assert the judge erred.
[¶ 31.] My reading of the holdings from the majority of jurisdictions convinces me that the judge must look to what was reasonably available to the insurer at the time the tender of defense was madejust as would be done had an appropriate declaratory judgment action been commenced. In my view, the underlying trial (and jury verdict) is immaterial at this time. It seems to me that, in order to properly apply the majority rule, the court needs to step back and make its review based upon what was known, or available, at the time the insurer declined to defend.
*563 Therefore, I would reverse and remand for an evidentiary hearing to permit the judge to make inquiry into the insured's subjective intent or expectations contemplated by Harrington, and the other authority cited above.
KONENKAMP, Justice (dissenting).
[¶ 32.] I would reverse this case as a matter of law as the insurance contract language controls the outcome. Farm Mutual's policy did not cover the occurrence in this case. Stoebner's insurance contract covered "accidents" and excluded injury or damage "expected or intended by the insured." Although a definition of "accident" is not in Stoebner's policy, we need not dither in its absence. No rule obligates insurance contracts to define every term, and mere lack of a definition will not render a policy ambiguous. Sans v. Monticello Ins. Co., 676 N.E.2d 1099, 1101 (Ind.Ct.App.1997).
[¶ 33.] Liability insurance, by its very nature, covers fortuitous loss; thus, implicit in every policy is the requirement that loss must be accidental in some sense. R.E. Keeton & A.I. Widiss, Insurance Law § 5.4(b)(1), at 497-99 (1988). In the insurance context, this Court and numerous others have defined "accident" to mean an unintended, unexpected, and unforeseen happening. Taylor v. Imperial Cas. & Indem. Co., 82 S.D. 298, 302-03, 144 N.W.2d 856, 858 (1966) (citations omitted)("an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force"); see, e.g., Town of Tieton v. General Ins. Co. of Am., 61 Wash.2d 716, 380 P.2d 127, 130 (1963)(accident defined as unusual, unexpected and unforeseen happening).
[¶ 34.] Deliberate or intentional acts are not accidents unless some further unexpected, independent and unforeseen occurrence causes the injury. See State Farm Mut. Auto. Ins. Co. v. Wertz, 540 N.W.2d 636, 639-41 (S.D.1995) (insured driver intended collision and resulting injury); Grange Ins. Co. v. Brosseau, 113 Wash.2d 91, 776 P.2d 123, 125 (1989) (en banc)(no accident can stem from an intentional act unless an independent happening occurs which results in injury). "The means as well as the result must be unforeseen, involuntary, unexpected and unusual." Grange, 776 P.2d at 125 (citations omitted).
[¶ 35.] Given the precise language of Farm Mutual's policy exclusion for expected or intended injury, I reject the idea that this case must be tried to determine if Stoebner "intended harm or self-protection" as the majority holds. Coverage should not apply if an injury is the natural and probable consequence of the insured's deliberate act. See Tri-State Ins. Co. of Minn. v. Bollinger, 476 N.W.2d 697, 705 (S.D.1991) (Wuest, J., concurring in part and dissenting in part). Keeton and Widiss explain: "For a limitation on coverage to apply under this approach, it is not necessary for an insurer to prove that an injury was intended. ... This type of approach is arguably compatible with the coverage terms now used in many types of liability insurance which exclude coverage unless an injury `is neither expected nor intended from the standpoint of the insured.'" Keeton & Widiss, supra, § 5.4(d)(1), at 522 (emphasis added).
[¶ 36.] This is not a case of an accident with an unexpected or unintended injury. Stoebner may not have expected her daughter-in-law to attack her, but Stoebner's response to the attack was to counter it with her own intentional use of force. Self-defense is not an involuntary or non-volitional response; it is a "justification" for assault and battery. See Restatement (Second) of Torts §§ 63, 65, 67 (1965). Restatement (Second) of Torts § 16 (1965) provides: "(1) If an act is done with the intention [meaning he believes the consequences are substantially certain to result] of inflicting upon another an offensive but not a harmful bodily contact ... and such act causes a bodily contact to the other, the actor is liable to the other for a battery although the act was not done with the *564 intention of bringing about the resulting bodily harm."
[¶ 37.] Stoebner may have only intended an impact necessary to disable her assailant, but she nonetheless, by her own admission, committed a deliberate and intentional act by grabbing her daughter-in-law's hair and pulling her to the floor. She may not have specifically intended any injury or, at least, not the injuries claimed. Nonetheless, that will not allow Stoebner to escape the plain language of the policy making her decision "accidental" or making unintended or unexpected the resulting injury.
[¶ 38.] I would reverse the judgment in this case.
NOTES
[1] We acknowledge those cases cited by Farm Bureau which hold that injuries inflicted in self-defense are expected or intended injuries under an intentional acts exclusion. See Bohnsack v. Employers Ins. of Wausau, 708 F.2d 1361 (8thCir.1983) (insured pled guilty to second degree murder after striking victim in head with a two-by-four piece of lumber); Allstate Ins. Co. v. Simms, 597 F.Supp. 64 (D.Or.1984) (insured shot two intruders in his home); Eubanks v. Nationwide Mut. Fire Ins. Co., 195 Ga.App. 359, 393 S.E.2d 452 (1990) (insured claimed to be suffering from insane delusions when he shot a man); Stein v. Massachusetts Bay Ins. Co., 172 Ga.App. 811, 324 S.E.2d 510 (1984) (insured intentionally shot son-in-law); Mitchell v. State Nat. Life Ins. Co., 406 So.2d 777 (La.Ct.App.1981) (insured's girlfriend intentionally shot insured and pled guilty to manslaughter); Auto-Owners Ins. Co. v. Harrington, 455 Mich. 377, 565 N.W.2d 839 (1997) (insured shot his unarmed neighbor with a shotgun as neighbor climbed insured's roof). We find these cases unpersuasive, despite the fact that they are claimed to represent the majority rule, and we decline to follow them.
[2] It should also be noted that Farm Bureau framed the issue as whether it had "a duty to defend Stoebner against claims not covered by the insurance contract merely because Stoebner alleged that she acted in self-defense."